IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LARRY BOMAR, | Cause No. CV 12-77-GF-SEH-RKS |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| DAN O'FALLEN; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

On September 14, 2012, Petitioner Larry Bomar, a state prisoner proceeding pro se, filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. Respondents ("the State") filed excerpts from the state court record on January 31, 2013. On June 18, 2013, he was ordered to show cause why two of his claims should not be dismissed with prejudice as procedurally defaulted. Mr. Bomar responded on July 12, 2013. He did not provide legitimate reasons for his failure to present his claims in state court. They are procedurally defaulted and should be dismissed.

## I. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily

1

dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). Rule 4 review "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for his consideration if they are not yet included with the petition." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases. "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id.*; *see also* 28 U.S.C. § 2243.

## II. Background

In December 2001, K.J., who was eight at the time and living in Oregon, told her mother that the grandfather of her friend, A., had touched her bottom. K.J. and A. did not know each other well. They met and played together one weekend in the summer of 2000 in Montana, when K.J.'s grandparents were staying at a campground run by A.'s grandparents. K.J. had not been back to Montana since that

time. Authorities began investigating in roughly January 2002. Trial was held in November 2005.

Mr. Bomar is A.'s grandfather. In at least one statement to police, K.J. said the man who touched her bottom was short and had a moustache and a tattoo. Mr. Bomar does not have a moustache or a tattoo. The trial transcript suggests he is not short. K.J. said the incident occurred in the morning, when the man who touched her was sitting in Mr. Bomar's favorite chair in Mr. Bomar's living room. He called her over to his chair, so she went over and stood by him for a short period of time. K.J. said A. was in the room, too, but he was watching cartoons. She said Mrs. Bomar was outside, tending to her flower garden. Both A. and Mrs. Bomar testified they were present when Mr. Bomar was sitting in his favorite chair and K.J. went over and stood by him. They said it was evening. K.J. gave a graphic and credible description of a penis becoming erect, and she said the man who touched her bottom held her in front of him by placing one of his hands on her shoulder blade. K.J. testified at trial. She identified Mr. Bomar as the man who touched her bottom.

In addition to K.J.'s mother and grandmother and an investigating officer, Officer Stoelk, the State called an expert witness, Rochelle Beley. Ms. Beley obtained a Master's Degree in marriage and family therapy, held various certificates for attending workshops and training "on the area of dealing with children,"

including therapy for sexually abused children. She worked for the State of Montana's Department of Child Protective Services from 1987 to 1990 and, at the time of trial, had been in private practice as a marriage and family therapist since 1990. 1 Trial Tr. (Doc. 5-10) at 165:17-167:18.

Beley testified that she reviewed the statements Stoelk reported K.J. made and applied "Statement Validity Assessment," a method she frequently used in her practice to decide whether "the mode of treatment needs to [be] for treatment of a sexual assault, or if the mode of treatment needs to be to treat for why this child made a false allegation." *Id.* at 171:19-172:4.[1]

---

[1]    Asked by the trial court, outside the presence of the jury, whether "Statement Validity Assessment" involved anything in "the nature of a controlled standard by which you measure statements," Ms. Beley responded:

> The actual control standard that they have used has been – they have compared it to other literature that shows consistent, you know, statements that contain these points have been consistent, and that has been the controlled standard, sample. In the area of sexual abuse research, controlled samples are very difficult to come across, as you can imagine, based on the nature of the crime itself. The measure that they have used for the control[l]ed sample is, those which have either been found in a court of law to be guilty, there's physical evidence or the perpetrator has confessed, so that's a controlled sample. And it has been – the components of this assessment have been placed against that controlled sample, of those components being valid statements.

1 Trial Tr. at 187:12-188:4. It is ironic that a witness would use a set of criteria based in part on what jurors found credible in other cases to inform a new panel of jurors about criteria that make a statement of abuse "valid." Further, there is no indication that statements of alleged victims are taken into account in any way if the accused is found *not* guilty in a court of law. (Nor is there any indication whether the "control group" included hearsay admitted under the now-superseded rule of *Ohio v. Roberts*, 448 U.S. 56 (1980), *overruled by Crawford v. Washington*, 541 U.S. 36 (2004), because a judge deemed it to have "sufficient indicia of reliability"). It is difficult to say whether this method is science or merely opinion polling with the imprimatur of science.

Q.                 What is the Statement Validity Assessment?

A.                 The belief of the Statement Validity Assessment is that there are certain aspects of a child's statement of sexual abuse that appear to be consistent for valid statements of abuse. Those aspects do not appear to be present in statements where children are fabricating abuse.

. . .

Q.                 And what information did you access, what materials did you receive and then apply Statement Validity Assessment to?

. . .

A.                 . . . I received [Stoelk's] report that was provided to the Glacier County Sheriff's Department, I received an Assessment Report from Liberty House, and I received a copy of Jeff Kraft's narrative, police department narrative and investigation.

Q.                 Of all those documents, what did you primarily assess?

A.                 I primarily assessed the report from the Salem, Oregon, Craig Stoelk's police report.

Q.                 And what was the result of the Statement Validity Assessment when applied to Detective Stoelk's report?

A.                 Based on my evaluation of the statements Mr. Stoelk reported [K.J.] made, it appeared many of those statements were consistent with the research, which shows valid statements of sexual abuse.

Q.                 I have no further questions.

1 Trial Tr. at 215:18-23, 217:3-5, 217:10-23.

On cross-examination, Mr. Bomar's counsel showed that Ms. Beley did not talk to K.J., did not talk to Mr. Stoelk, did not talk to Mr. Bomar, and did not talk to any other witness or investigator involved in the case. She assumed K.J.'s statements "were about" Mr. Bomar. She admitted that "[t]he focus of the validity assessment is on the actual statements made by the child so it's only as valid as the reporting of the statements made by the child," and she did not know what actual statements were made by the child because the interview was not recorded. 1 Trial Tr. at 220:11-22. She believed it was "important to ascertain if the child has an emotional reaction to the alleged abuse." She did not know how K.J. responded emotionally to Mr. Stoelk's interview. *Id.* at 221:13-17. Ms. Beley "indicated that there were reports of behavioral responses with this child that would be consistent with children of trauma, one form of trauma being sexual abuse." *Id.* at 222:15-18. These responses included "nightmares, fears of people and places and situations, anger, sadness, nervous habits, problems eating and night-wetting," *id.* at 231:1-3, but, Ms. Beley admitted, "part of my report discusses the need to investigate the ideology[2] of those trauma symptoms, meaning when did they start," *id.* at 222:15-20, meaning she did not know when they started, *id.* at 231:13-19.

In the defense case-in-chief, Mr. Bomar presented the testimony of a

---

[2]    Sic. Presumably "etiology."

state-licensed clinical and forensic psychologist, Donna Zook, Ph.D., who testified

that the method to which Ms. Beley referred was "Criteria-Based Content Analysis."

She defined it as "a series of observations that are made while directly interviewing

the child." 2 Trial Tr. (Doc. 5-11) at 265:4-18. The State did not cross-examine Dr.

Zook and did not refer to any expert testimony in its closing.

On November 30, 2005, the jury acquitted Mr. Bomar of attempted sexual

intercourse without consent but convicted him of the lesser included offense of

sexual assault. 2 Trial Tr. at 361:18-362:13. On February 15, 2006, Mr. Bomar was

sentenced to serve 27 years in prison, with 12 suspended. 2 Trial Tr. at 480:2-7.

Mr. Bomar moved for a new trial, asserting that the admission of Ms. Beley's

testimony deprived him of a fair trial. On February 27, 2006, the trial court denied

the motion.

Mr. Bomar appealed. He challenged the sufficiency of the evidence and the

admission of Ms. Beley's testimony. The Montana Supreme Court affirmed his

conviction on March 18, 2008. *State v. Bomar*, 182 P.3d 47, 48 ¶ 1 (Mont. 2008).

His timely petition for rehearing was denied on April 23, 2008. His conviction

became final ninety days later, on July 22, 2008. *Gonzalez v. Thaler*, __ U.S. __, 132

S. Ct. 641, 653-54 (2012).

On April 4, 2009, Mr. Bomar filed a petition for postconviction relief in the

trial court. New counsel was appointed to represent him. Counsels' depositions were taken,[3] and an evidentiary hearing was held on December 15, 2010. On May 2, 2011, the trial court denied the petition. Mr. Bomar appealed. On July 31, 2012, the Montana Supreme Court affirmed the trial court's denial of postconviction relief. *Bomar v. State*, 285 P.3d 396, 397 ¶ 1 (Mont. 2012).

Mr. Bomar timely filed his federal petition on September 14, 2012. 28 U.S.C. § 2244(d)(1)(A), (2).

### III. Mr. Bomar's Claims

Mr. Bomar did not complete the petition form he submitted, *see* Pet. (Doc. 1) at 4 ¶¶ 15A, B, but he submitted a letter that adequately sets forth his claims, Letter (Doc. 1-2). He asserts that "[t]here was never any evidence that I did anything," that is, that the evidence was not sufficient to support the conviction, Letter at 4 (Claim A); that admission of Ms. Beley's testimony violated his Sixth Amendment right to confront the witnesses against him and his rights to a fair trial, due process, and equal protection, *id.* at 5 (Claim B); that counsel were ineffective because they failed to call Dr. Scolatti to testify against admission of Ms. Beley's testimony, *id.* at 3 (Claim C); and that he cannot be eligible for parole unless he admits his guilt in a treatment program in prison, *id.* at 4-5 (Claim D).

---

[3] The depositions apparently were not filed in the state court record. They are not in the record before this Court.

## IV. Analysis

### A. Sufficiency of the Evidence

This claim was adjudicated by the Montana Supreme Court. *Bomar*, 182 P.3d at 49-51 ¶¶ 16-27.The deferential standards of 28 U.S.C. § 2254(d) apply. Federal habeas relief is available only if the Montana Supreme Court's decision "applies a rule that contradicts the governing law set forth" in the United States Supreme Court's cases; "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent"; if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," *Williams v. Taylor*, 529 U.S. 362, 405-07 (2000) (interpreting 28 U.S.C. § 2254(d)(1)); or if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Further, evidence is sufficient to support a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also In re Winship*, 397 U.S. 358, 364 (1970). To prove sexual assault, the State must

prove the defendant knowingly subjected another person, without that person's consent, to touching of the sexual or other intimate parts, directly or through clothing, to arouse or gratify sexual desire. Mont. Code Ann. §§ 45-2-101(66)(b), -5-502(1) (1999).

Even disregarding Ms. Beley's testimony altogether, a reasonable juror could have found Mr. Bomar guilty of sexual assault beyond a reasonable doubt. K.J. exhibited knowledge not typical of a seven-year-old girl and gave a compelling description of what occurred. Even if a reasonable juror did not believe Mr. Bomar could have penetrated K.J.'s genitalia under her clothes in the proximity of both A. and Mrs. Bomar, the same juror could have found that he touched her over or under her clothes and that K.J.'s description of his sexual response was credible evidence of gratification. K.J.'s age alone established lack of consent. Mont. Code Ann. § 45-5-501(1)(b)(iii). Finally, according to the testimony at trial, K.J.'s identification of Mr. Bomar as the culprit was unequivocal and persistent.

The high standards of § 2254(d) are not met. This claim should be denied.

**B. Admission of Ms. Beley's Testimony**

In this Court, Mr. Bomar alleges that Ms. Beley's testimony violated his Sixth Amendment right to confront the witness. Letter at 5. In the state courts, however, he did not allege a federal constitutional basis for his objection to admission of Ms.

Beley's testimony, either in his first direct appeal or in his postconviction appeal. Mr. Bomar's claim is unexhausted because he did not present it to the Montana Supreme Court as a claim for relief under *federal* law. *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008); Appellant Br. (Doc. 5-17) at 29-39; Appellant Reply (Doc. 5-19) at 14-16.

It is now too late for Mr. Bomar to challenge Ms. Beley's testimony on Sixth Amendment grounds in state court. Mont. Code Ann. §§ 46-21-102(1)(a), -105(1)(b), (2); *State v. Root*, 64 P.3d 1035, 1037-38 ¶¶ 16-18 (Mont. 2003). As no state judicial remedies remain available, those remedies are deemed exhausted. But "where a petitioner did not properly exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claim is procedurally defaulted." *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)) (internal quotation marks omitted).

Mr. Bomar was given an opportunity to show cause to excuse his failure to present this claim in state court. Order to Show Cause (Doc. 6) at 5-7. In response, he argues that the trial court must have known his counsel were asserting federal constitutional due process rights. Resp. to Order (Doc. 7) at 1-6. Even if the trial

11

court assumed that much, however, the federal claims were not preserved for federal habeas review unless the Montana Supreme Court was notified that Mr. Bomar sought review of his claims under federal law. But it was not so notified. Because Mr. Bomar did not present this claim as a claim for relief under federal law, it is defaulted.

Mr. Bomar further states that if counsel did not adequately present his claim as an issue of federal law, "it should amount to *per se* evidence of ineffective assistance of counsel." *Id.* at 6. This Court has found no United States Supreme Court decision outlining *constitutional* limitations – that is, limitations that are binding on the States – on the admissibility of expert testimony as to witness credibility or on experts' qualifications to testify. Appellate counsel was not ineffective in choosing to brief the issue under Montana's adaptation of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).[4] This Court can only conclude that Mr. Bomar's default of this claim in state court is unexcused. It should be dismissed with prejudice.

## C. Ineffective Assistance of Counsel

Claims of ineffective assistance of trial and appellate counsel are governed by

---

[4] In addition, Mr. Bomar did not present, in postconviction proceedings, a claim of ineffective assistance of appellate counsel. That claim, too, is unexhausted and defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000). Because it lacks merit, there is no need to consider whether its default, too, may be excused. *Id.* at 453-54.

*Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Bomar must show both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Moreover, this claim is governed by the deferential standards of § 2254(d). Mr. Bomar "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786-87 (2011). And, because the claim is one of ineffective assistance of counsel, his task is "all the more difficult." *Id.* at 788. "The standards created by *Strickland* and by § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)) (internal quotation marks and citations omitted). *See also Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2010) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court").

Mr. Bomar cannot meet these very high standards. While counsel could have

called Dr. Scolatti to testify at a pretrial *Daubert* hearing, they instead thoroughly impeached Ms. Beley on cross-examination and also presented an arguably better-qualified expert to rebut Ms. Beley's testimony for the jury. Counsels' performance did not fall outside the wide realm of reasonable professional assistance. The high standards of § 2254(d) are not met. This claim should be denied.

### D. Parole Restriction

At sentencing, the trial court designated Mr. Bomar a Level 3 offender and a sexually violent predator. It ordered that he would not be eligible for parole until he completed Phases I, II, and III of the Sexual Offender Treatment Program at Montana State Prison. The trial court said:

> I am aware, that given the policies of the Board of Parole and Pardons, that sexual offenders, generally, do not receive parole. I'm also aware that sexual offenders can obtain sexual offender treatment in the Montana State Prison, even without admitting guilt of the offense for which they've been convicted.
> 
> In conclusion, I believe that this sentence is commensurate with those sentences imposed in like circumstances and will assure that you will not be a risk to the community until you have received sexual offender treatment and/or are physically unable to offend.

2 Trial Tr. (Doc. 5-11) at 483:12-22; *see also id.* at 480:8-11, 482:21-23.

In June 2009, Mr. Bomar states, he was expelled from Phase II of the treatment program, either "for failing to state I was guilty of any past wrongs," Resp.

to Order at 6 ¶ 5, or because he "continues to adamantly deny the offense for which he was charged and sentenced," Participation Report (Doc. 7-1) at 1. In September 2009, when Mr. Bomar had served the minimum time required to become eligible for parole, *see* Mont. Code Ann. § 46-23-201(3), he was notified that he was not eligible because of the trial court's restriction. Letter from J. Thomas (Doc. 8-1) at 1.

Mr. Bomar never raised this claim in state court. The claim is one of the very small number of claims that may be raised either in a civil action under 42 U.S.C. § 1983 or in a habeas petition under 28 U.S.C. § 2254. *See Docken v. Chase*, 393 F.3d 1024, 1030 (9th Cir. 2004). This action is a habeas action. The procedural demands of federal habeas law apply. This Court may not consider the claim if it is unexhausted but may still be raised in state court or if it is procedurally defaulted and the default is unexcused.

To the extent Mr. Bomar believes *the terms of the trial court's criminal judgment* violate the Fifth Amendment, the claim is defaulted, because it is too late to raise it in state court now. Mont. Code Ann. §§ 46-21-102(1)(a), -105(1)(b), (2); *State v. Root*, 64 P.3d 1035, 1037-38 ¶¶ 16-18 (Mont. 2003). Although Mr. Bomar had an opportunity to excuse his procedural default, Order to Show Cause at 5-7, he simply asserts the claim has merit. He does not justify his failure to present its perceived merit to the state courts. Thus, his default of the claim in state court is

unexcused, and the claim should be dismissed.

On the other hand, if Mr. Bomar believes it is not the criminal judgment but *the Treatment Program's requirements* that infringe on his Fifth Amendment privilege against compulsory self-incrimination, then his claim is not exhausted but may still be presented in state court in a civil action. If it is unexhausted, it should be dismissed. 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Rose v. Lundy*, 455 U.S. 509, 520 (1982).

Thus, regardless of whether the target of Mr. Bomar's claim against the parole restriction is the criminal judgment or the requirements of the sexual offender treatment program at the prison, the claim should be dismissed from this habeas action.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting *Slack*, 529 U.S. at 484).

Mr. Bomar's claims A and C lack merit. The evidence was sufficient to allow a rational juror to conclude that Mr. Bomar sexually assaulted a six-year-old girl. While counsel could have pursued a different course in attempting to prevent admission of expert witness testimony, they obtained a rebuttal expert and they thoroughly cross-examined the expert, exposing serious weaknesses in her method and the basis for her conclusion. As to these claims, Mr. Bomar does not make a substantial showing that he was deprived of a constitutional right.

Mr. Bomar's claims B and D might meet the relatively low threshold of § 2253(c)(2), but there is no room for doubt as to the procedural ruling. Mr. Bomar's claim that the admission of Rochelle Beley's testimony violated the Sixth Amendment's Confrontation Clause seeks to challenge an expert witness's qualifications to testify and her offering of an opinion on the credibility of a child witness. Those questions are novel ones in terms of federal constitutional law, and Mr. Bomar has offered no justification whatsoever for his failure to present them to

the state courts. It is also clear that Mr. Bomar's Fifth Amendment claim, regarding the requirement that he admit either his crime or other wrongs to make himself eligible for parole, has not been presented in the state courts. Depending on what, precisely, Mr. Bomar challenges, the claim is either procedurally defaulted without excuse or unexhausted. In either case, it should be dismissed.

Mr. Bomar presents no open questions and nothing on which reasonable jurists could disagree. The law underlying denial or dismissal of his claims is well-established. A COA is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Claims A and C of the Petition should be DENIED on the merits.

2. Claims B and D should be DISMISSED on procedural grounds.

3. The Clerk of Court should be directed to enter, by separate document, judgment in favor of Respondents and against Petitioner.

4. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Bomar may object to this Findings and Recommendation within 14 days.[5]

---

[5]    As this deadline allows a party to act within 14 days after the Findings and

28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Bomar must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 23rd day of December, 2013.

_/s/   Keith Strong_____
Keith Strong
United States Magistrate Judge

---

Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.